## LAWSON v. HASKELL TELEPHONE CO.
### (No. 9264.)

(Court of Civil Appeals of Texas. Ft. Worth. April 3, 1920.)

Telegraphs and telephones &=68(1)—Damages for mental anguish from failure to connect with physician not recoverable.

Where plaintiff was visiting his father, who was a subscriber of defendant telephone company, and while so visiting his child became ill, and by the direction of his father he attempted to use defendant's line to call a physician, and defendant negligently failed to connect him with the physician, he could not recover damages for mental anguish by reason of the child's death; it not appearing that there was any contract on the part of the telephone company to perform that particular service, and for the further reason that the circumstances could not have reasonably been foreseen.

Appeal from District Court, Throckmorton County; W. R. Chapman, Judge.

Suit by C. S. Lawson against the Haskell Telephone Company. Judgment for defendant, and plaintiff appeals. Affirmed.

C. J. Henson, of Throckmorton, for appellant.

W. H. Murchison, of Haskell, and Theodore Mack and Phillips & Trammell, all of Ft. Worth, for appellee.

CONNER, C. J. C. S. Lawson instituted this suit against the Haskell Telephone Company to recover damages upon allegations, to the effect, in substance, that he, his wife and infant child, were upon a visit to his father, W. R. Lawson, who was a box patron and box-paying subscriber of the appellee company; that while so visiting his father, his infant child became suddenly and violently ill, necessitating the attendance of a physician; that by the permission and direction of his father he attempted to use appellee's telephone line for the purpose of securing the attendance of a physician in Throckmorton, a number of miles distant; that had he been able to get connection with said physician he would have promptly answered the summons, but that, after repeated attempts to arouse the operator of the appellee telephone line in the town of Throckmorton, he was unable to do so, and he was required to use other means, causing much delay, in order to secure the attendance of the physician; that the failure to get into communication over the telephone with the physician was due wholly to the negligent act of the operator at Throckmorton in being asleep. It was further alleged that, while appellant finally secured a physician, it was too late to render the needful assistance, because of which the infant child died, thus causing great mental pain and distress to appellant's wife and to himself. The court heard the evidence, but at the conclusion sustained the defendant's general demurrer to the petition, and adjudged that the defendant go hence without day and recover its costs. From this judgment, the plaintiff has duly appealed.

The ruling of the court below, it seems quite evident, was induced by the decision of the case of Telephone & Telegraph Co. v. Solomon, 54 Tex. Civ. App. 306, 117 S. W. 214, and to which a writ of error was refused by our Supreme Court. We will not undertake to repeat the reasoning of the court in that case, as to do so would be superfluous. The circumstances, however, are very similar to those developed by the evidence and by appellant's petition in this case. It was held, upon a construction of articles 4694 and 4695 of our Revised Statutes, that the plaintiff was not entitled to recover on the ground that it did not appear that there was any contract on the part of the telephone company to perform the particular service under consideration, and that, inasmuch as the deceased wife in that case could not have recovered under the limitation of article 4695, for the reason that the circumstances could not have been reasonably foreseen, therefore the damages claimed were remote and not recoverable. We have been unable to distinguish the case before us from the one cited, and because of the refusal of the writ of error we feel bound to follow the decision so adverse to the claim of appellant in this case. The judgment below will accordingly be affirmed.

We wish to add, however, as a brief protest against what is possibly a preponderance of the decided cases, and without attempting to fully elaborate the views or to support them by an extended citation of authority, that if the question was an open one we would be inclined to the opinion that the very nature of appellee's business as a public service corporation, which it clearly is, amounts to an invitation to all persons, having occasion to do so, to use its instrumentalities for the various purposes for which such instrumentalities are designed and adapted, and that in favor of any such person who pays, or is ready and willing to pay, the rental and customary charges, there arises an implied duty to exercise at least ordinary care to furnish the usual and ordinary agencies of the business and to perform the service it is called upon to perform, and that failure to exercise such care constitutes negligence which renders the company liable for the legal damages proximately caused thereby. Here the facts are undisputed that appellant, with the authority of his father who had paid for service of the kind, called up appellee's agent in charge of its office at

Throckmorton, for the purpose of communicating an important message, and that such agent was asleep at his post, thereby being guilty of gross negligence. The evidence renders it quite probable, if not certain, that such negligence proximately resulted in the death of appellant's infant child, to the inexpressible mental suffering of the father and mother.

It is to be observed that this action is not for damages for the physical or mental pain suffered by the deceased child, nor yet for loss of the value of its services, and hence not necessarily dependent on our statute, giving a cause of action for injuries resulting in death caused by the wrongful act or negligence of another, and given such controlling effect in the Solomon Case. On the contrary, the action may well be said to be based upon general principles relating to violated contracts, and for the recovery of damages because of mental pain suffered by the surviving mother and father. Their cause of action may well be held to be separate and distinct from any cause of action that the deceased child may have had in case it had survived. In this respect, the case is possibly distinguishable from that of Telephone & Telegraph Co. v. Solomon, cited in support of the judgment below, though perhaps not certainly so, as the opinion in that case does not set forth the elements of damages pleaded by the plaintiff. But regardless of any right under the contract for service by the father who subscribed and paid for the use of the telephone, not only for himself but presumably, also, for the benefit of all members of his family, and regardless of the death statute referred to, the company owed a duty to the plaintiff and his wife as members of the public. In 37 Cyc. page 1610, par. "c," it is said:

"Telegraph and telephone companies are quasi public corporations, or servants, engaged in a quasi public business, in many respects similar to that of common carriers, and their instruments and apparatus are therefore devoted to a public use. Such companies receive from the public various valuable rights and franchises, such as the right of eminent domain, and are subject to certain well-defined duties and obligations to the public, such as to serve the public generally and without discrimination, and to conduct their business in a manner conducive to the public benefit. Owing to their quasi public character, such companies are subject to legislative regulation and control. While the franchise for conducting such a business may be exercised by an individual as well as by a corporation, the fact that it is so exercised does not affect the public character of the business, or the obligation owing to the public, or its liability to legislative regulation and control.

"Telegraph and telephone companies have frequently been termed 'common carriers' or common carriers of news or information, and in some jurisdictions have been declared to be common carriers by constitutional or statutory provisions; but, while they are in the nature of common carriers in regard to their quasi public character, and their duty to serve the public generally and without discrimination, and in being subject to legislative regulation and control, they are not, strictly speaking, common carriers, and their obligations and liabilities are not to be measured by the same rules as are applicable to common carriers of goods. So while they are liable for negligence in the performance of their public duties, they are not liable as insurers."

The same author, on page 1650, par. "a," has this further to say:

"Since telegraph and telephone companies are engaged in a quasi public business in many respects similar to that of common carriers, it is their duty to serve the public generally, impartially, and without discrimination, extending to every member thereof equal facilities under equal conditions. In some jurisdictions there are statutory provisions to this effect, but such duty exists independently of statute by reason of the character of such companies and their business."

In chapter 14, tit. 25, of our Statutes, art. 1238, prescribing certain regulations relating to telephone and telegraph companies, it is said:

"All companies, individuals, firms or corporations doing a telephone business in this state shall be compelled to make physical connections between their toll line at common points, for the transmission of messages or conversations from one line to another; such connection to be made through the switchboard of such individuals, companies, firms or corporations, if any is maintained at such points, so that persons so desiring may converse from points on one of such lines to points on another."

Giving this statute a liberal construction, as we think should be done, and having in view the nature of the business and the legislative purpose as indicated, it is apparently broad enough to include the duty on the part of a telephone company to connect the lines, not only of independent systems as we held in the case of Texarkana Telephone Co. v. Blisard, 216 S. W. 213, but also of its different subscribers when they meet at a common point and may be connected at the switchboard at all hours, as is alleged and sufficiently shown in the case before us. For a violation of such duty, it would seem that there should be some remedy, otherwise the rights of its patrons and of members of the public have no safeguard.

But it is urged that damages for mental pain is not recoverable in the absence of physical injury or some actual damages. This is not true with us in telegraph cases, as might be demonstrated by citation of numerous Texas decisions. We see no sufficient reason why the rule applied with us

in telegraph cases should not be applied in telephone cases. The nature of the business is substantially the same. They are both common carriers of information, and both treated together in our statutes regulating such corporations. Moreover, there was the loss of a right secured by fees actually paid in advance for such service, besides the expenses of the child's burial.

It is also urged that the results of the proven negligence of the company could not have been reasonably anticipated or foreseen, and that hence appellant's damages are remote and not recoverable, in accordance with a general rule that to be actionable it must appear that the wrongdoer could have foreseen that damaging results of the kind shown, or of a similar kind, might follow as a consequence of his negligence. The undertaking and duty of the telephone company as pertinent to this case was not to transmit the desired message to the physician, but merely to connect the wires of the two subscribers; hence notice of the character or importance of the message could scarcely have been within the contemplation of either party to such transaction. It is to be doubted, therefore, whether the rule mentioned has any just application in the case before us.

But if it be admitted for the purpose of argument that the rule referred to does apply, and, further admitting it to be true that appellee might not have been able to foresee that its subscriber, the father of appellant, had a son with wife and child who would be on a visit to him at the particular time, and that the child of the son would suddenly become violently ill, requiring the prompt attendance of a physician, and to secure which an immediate use of the telephone would be necessary, nevertheless that a similar, if not identically the same, situation might arise at any time in the home of any one of its subscribers and patrons could have easily been anticipated. Such happenings are among the ordinary incidents of our domestic life, and a telephone company ought to be held to anticipate them. One of the very purposes for which a telephone is designed, and of the ordinary domestic patron in subscribing for its use, is to meet and to provide for just such situations. While appellant and the necessities of his case were not known to appellee or to its agent at Throckmorton, yet had its agent been alive to his duty it would have been put upon inquiry, and could have obtained full knowledge thereof, and hence the general rule requiring notice should not be applied, as appellee ought not to be permitted to take advantage of its own wrong, and thus be excused because of a want of knowledge. However, for the reason that the case of Telegraph & Telephone Co. v. Solomon, already referred to, seems to rule contrary to the views above expressed, and to be controlling, we have joined in the affirmance of the judgment.